Pleased to hear from you. Yes, sir. Thank you, Your Honor. Good morning. May it please the court. My name is Steve Biss. I represent Barbara and Mike Agnew. This case is controlled by a statute that is plain and unambiguous that has since its inception and has been interpreted by every court uniformly. Every court that's interpreted has found that it has plain meaning. Sixty days after the issuance of a confessed judgment in Virginia, if that confessed judgment is not served on the judgment debtor, the judgment becomes void. And that is the statute that controls the outcome of this case. Judge Kacharis, in the Benton Land case, which we've cited in our brief, and numerous circuit court cases, which are not controlling, but numerous circuit court cases that have interpreted this very statutory scheme, have said these statutes must be strictly construed. The evidence in this particular case, well, let me step back. The effect of a failure to serve renders the judgment void. This court, in the Daniels case, which we have cited, has said because the clerk failed to effect service within the statutory period of 60 days. Well, that assumes, you said because the court failed to effect service, but that assumes that there was a failure to effect service. Yes, sir. I indicated just a moment ago I was going to step back for a moment before I talked about the evidence, but I will go right there. The question of whether service was perfected, as I understand it, is a question of fact subject to clear error review. Judge, there is no, and I would submit it's subject, because this is here on motion for summary judgment, it's subject to a de novo review, and if the court looks at this record, it's a voluminous record, if the court looks at this record, there is no evidence in this record anywhere. And again, it is a voluminous record that, number one, the clerk of the Richmond Circuit Court ever sent the papers to Virginia Beach. In our reply brief, and in the record, I'll just refer to our reply brief page. I want to make sure I understand in terms of our review of it. You say it's a de novo review because it's here on summary judgment, and is it a de novo review to determine if there's an issue of fact that should be sent to a jury, or are you saying as a matter of law, the evidence points only one way? As a matter of law, the evidence only points one way. Is there no scenario in which the evidence could be such that it should go to a jury? Judge, there is no scenario. We move for summary judgment, but on this record, there is no scenario under which the court could find that there was service on the agnews. There is no scenario. If you look at the record, you see, number one... What's the role of this attorney in fact? They signed this confession judgment. You've got an attorney in fact there who gets it, and I take it the statute kind of deals directly with that, or at least it says something to that effect that it is in that instance that you give the notice. The last case, we talked about elements. First element here is there has to be an attorney in fact, and it's stipulated. There was an attorney in fact appointed under the forbearance agreement. That attorney in fact did something, second element. That attorney in fact went to the circuit court of the city of Richmond and confessed judgment, and there is a confessed judgment that was issued by the circuit court of the city of Richmond. That's the third element. The fourth element under the statute is that confessed judgment must be served by the clerk on the judgment debtor, and then a fifth or sixth element, the sheriff or the officer who is charged with the service must file a return of service. Number one, there's no evidence in this case that the clerk of the Richmond circuit court ever... Is it correct that in Virginia Beach you were arguing in the Virginia Beach litigation that the confessed judgment was valid? No sir, that's not correct. In fact... Well, didn't the district judge think that you had? I don't believe so. The district court in this case only ruled that there was a presumption of service. Well, of course there is. There is a presumption of service under certain facts. Don't you feel the burden of overturning the presumption of regularity? Judge, there's no presumption of service in this case, and the reason is there's no return of service. In the cases that we have cited, the Ramsey case... Why is this coming up nine years after the fact? Well, the confessed judgment was in June of 2000. The judgment creditor waited eight years to proceed with the judgment creditor suit. There was a judgment creditor suit that lasted another six years, and so it... You had notice of the confessed judgment all along, did you not? No sir. Well, you signed the forbearance agreement. We signed the forbearance agreement. All the forbearance agreement did was create the right of the creditor to confess judgment. The undisputed facts in this case are that the Agnews first acquired notice of the confessed judgment in June of 2007. There is not a single letter, not a single piece of evidence that would show anyone that they had notice prior to June of 2007, which is seven years after it's void. Seven years after it's void, they first are aware of the confessed judgment and... Let's make sure we understand. You don't mean had notice. We're talking statutory notice. I don't think you're saying factually they didn't have notice. They weren't aware. So your contention is they didn't have notice of this judgment for those seven years. That's correct. They were not aware of it at all. The judgment creditor may... I just want to be clear. I'm just trying to make sure I understand this business. They were not aware of it at all. Your argument is really they didn't get the statutorily required notice. Because I'm not sure they're the same. Maybe they are. I want to address your question. They were not aware of it. And I'll point the court to a couple of pieces of evidence in this case. On June 8 of 2000, the creditor's attorney sent a letter to the Richmond Circuit Court together with the request to issue the confession of judgment. The agnus were not copied on that letter. The agnus did never receive by mail from the judgment creditor a copy of the judgment. The agnus were never served by any sheriff or private process server. The agnus were never sent a certified letter by the judgment creditor. But what about the language in the agreement that says, quote, allows the creditor to obtain the judgment against you without any further notice? Judge, I... I said all caps in that agreement. Yeah, but Judge, there's two things. That particular language on the front, which is in bold capital letters, that language is required by the statute, by 8.01431. There's a statute in Virginia that says if you don't have that magical language embossed on the instrument, you can't confess judgment. What language are you talking about? The language that says this instrument contains a confession of judgment clause. It's on the very first page of the forbearance agreement. It says forbearance agreement regarding confession of judgment. Yes, sir. And there is... And then you've got a waiver in there that says without any further notice. That language is required by statute. That language has to be on it in order for the creditor to be able to confess judgment. That does not constitute under any case that's been decided or any other statute the requirement of serving. And I will say this, Judge. If you look at this statutory scheme and begin at the beginning... No, what... Stepping back a bit, this seems to me... I get the impression that, you know, you signed a forbearance agreement and you're trying to do everything possible to get out of paying what that forbearance agreement says you owe. You got a significant benefit from that forbearance agreement, which was that the creditor held off any kind of foreclosure or efforts to make a debt collection. You know, you knew in the forbearance agreement what you would owe if the resource litigation didn't reach some sort of settlement or if the resource litigation was not pursued, which you didn't pursue. And it seems to me, you know, you've got six or seven assignments of error and you're throwing them against the wall. But the question at bottom is when you sign a forbearance agreement, get benefit from the forbearance agreement, the forbearance agreement says there's a confessed judgment without notice. And you know you have to pursue the resources litigation. You never did. And so we have these five or six things. But at the bottom of it all, you signed a contract. You signed a contract, and the contract contained certain conditions, which is that the creditor would forbear, but you would owe certain amounts if you didn't pursue the resource litigation, which you didn't. It just seems to me that really at heart this is a contract case. You signed up and undertook certain obligations. You defaulted on those obligations, and now you want to get out of paying what you owe and the benefit that the forbearance agreement gave you. Judge, let me be clear in my response. The contract goes both ways. The contract in this particular case sets up a very, very unique instrument that allows a creditor to confess judgment. Judge Kacharis, again, in the Benton Land case, has said that this is such a drastic measure that it requires strict construction to avoid, to prevent abuse. And Judge Winn, just to go back to this issue, and so Judge Wilkinson, the creditor has to follow the statutory scheme set up in the contract, just like the debtor does. No exceptions. The creditor doesn't get to breach the contract by not complying with the statutory construct. The first statute is, in order to be able to confess judgment, you have to have that language embossed on the agreement. That's 8.01431. Then you go all the way down to 438, and you also have another element here. That is, after they confess judgment, the order has to be served. The Virginia General Assembly doesn't say, just because you put the magic language on the contract, that absolves you of the obligation to serve the judgment debtor. They're separate elements. You have to jump through each hoop because this is a drastic remedy, and it could be abused by not jumping through the hoop. And every case that we have cited, none of which have been disputed, there hasn't been any contrary authority, every case has said, if you do not follow every step in this path, your confessed judgment is void. Is the forbearance agreement a valid agreement here? Yes, sir, it is. We've maintained that since the beginning. I'm just following Judge Wilkerson's point, which is interesting.  against this property to claim it under foreclosure for the confessed judgment here. If that had happened, I suppose you would have no problem with what's going on here because you've been relieved of liability, personal liability for it in all other regards under the forbearance agreement. I mean, it only arises because after having settled that deed of trust matter that was accepted here, I guess you were somewhat surprised to see them turn around and come back and say, well, you didn't follow up on the terms here. You didn't settle this thing or it didn't go to a verdict as a forbearance agreement requirement. Therefore, we're going to go against you personally for this confessed judgment. And then the whole matter of notice then comes alive. And I'm just trying to understand that. And you're now saying, well, forbearance made us do this. We didn't have to. We didn't want to put it in there. That doesn't mean we got it. We didn't waive anything by signing this forbearance. In other words, we want all the benefit of the forbearance, but we don't want any of the obligations to go with it. Is that really where you're going with this? We don't want to be obligated to say we waived something when, in fact, the agreement here says we did. Judge, I'm not sure I'm following your question, but the issue in this case is the credit. This is the first time this has ever happened to me in court. Judge, I apologize for this. Judge, the credit. Let me make sure I'm clear. You've got a forbearance agreement that you think is good, and it's good for all of the things that it does for you. But when that forbearance agreement explicitly indicates that it regards or confesses judgment and that you, without any further notice, you don't need any more notice of anything or you, in other words, basically you waive, you don't think that part is good because the statute requires you to put that in there. Judge, they never waived the service. The language on the first page of the forbearance agreement must be there in order to have a valid confession of judgment note. It has to be there. The Virginia General Assembly in 8.01431 has said that this language has to be on the form, and so that's why it's there. I can't see the substantial compliance. I can't. There was nothing vague about in the forbearance agreement. I thought the forbearance agreement simply waived objections to the confessed judgment without further notice. And then we get into the question that it was served. I'm not sure that it wasn't served. There is a presumption of regularity with respect to service, and the handwritten notes say service issue. Judge, may I answer your question? I see my time is up. Why don't you reserve that for your rebuttal time? Yes, sir. Thank you. Okay. Mr. Storey. Good morning, Your Honor. Nate Storey on behalf of the Appalachee United Leasing. Judge, you have pointed out several grounds here, and on this hearing you may affirm on any of the grounds. Is your best argument waiver? Waiver and estoppel, Your Honor. Talk waiver. You all have stated several of the grounds of waiver here. That very forbearance agreement, this is different than typical confession of judgment notes. Typically there's some type of act, some condition, some default, and then there's going to be a confession of judgment. Here, this was a contract for confession of judgment. Here, they approved and ratified as if done by themselves the confession of judgment by that attorney. The confession of judgment was done six days later. There was no condition here. That was stopping this confession of judgment from happening. And, Judge, I would disagree with counsel, and I would say there is plenty of evidence on which Judge Wright-Allen and Judge Spencer from Richmond based their opinions. Because the summary judgment motion wasn't answered, the allegations are admitted, there were allegations that this was a valid confession of judgment, and those were not denied. Well, let's talk about the judicial estoppel issue. You base that on the fact that they went down to Virginia Beach and said that it was valid, and then now they come in here and say it's invalid. Is that where your judicial estoppel comes from? Yes, Judge. In the 2007 litigation in Virginia Beach, that record is replete with them providing, not only just referencing the confession of judgment, but attaching it to the briefs and saying, you can't, creditor, foreclose under the separate deed of trust and judgment because those are subsumed in this confessed judgment, this one right here. If it wasn't valid, that couldn't be the case. And that's what was argued. And that's what was argued to Judge Shockley in Virginia Beach, but also to the Supreme Court of Virginia. And so the Virginia Supreme Court, even on one of the cases that they cited in their brief, Henry Dixie Splint, which went up to the United States, but the Supreme Court Virginia case there shows that judicial estoppel does apply to even judgments that could be void. And so, yes, that's where we have the judicial estoppel argument, Your Honor. Related to that, I noticed that sanctions were imposed because the litigants, the plaintiffs, had misled the court in Judge Allen's view and submitted a highly redacted transcript of the Virginia Beach litigation. Now, Judge Allen felt she'd been misled by the transcript of the Virginia Beach litigation that was submitted. What was redacted from that transcript that led to the imposition of the sanctions? Well, the entire case and the posture and the history and what was at issue, I don't believe, was clearly stated. What was the most relevant point of this litigation? Was this the same proceeding that they claimed in Virginia Beach where they claimed the confessed judgment to be valid? In the complaint, they argued that Judge Shockley's statements in Virginia Beach were race judicata and collateral estoppel when she was discussing this very confessed judgment to which they didn't object. And then I think Judge Wright Allen was confused in the fact that she thought the personal liability and judgment that was being referred to was a different judgment. But what did they redact from the Virginia Beach transcript? It just simply wasn't the full version of her opinion and her statements. What was left out? I don't recall right now without looking back at it, Judge. Well, Judge Allen obviously felt it was something material. And I wonder whether what was redacted had to do with the confessed judgment in some way. It was her statements about the judgment, but it was bringing it up for the first time in that litigation. And then there was a confusion over whether that was the issue related to the leases and the foreclosure that was pending down there or whether it was related to the actual confessed judgment. I believe that's where Judge Wright Allen was confused. And that wasn't corrected in the motion for summary judgment. We filed a motion for reconsideration and clarification so that that could be clarified. That reconsideration motion is on record in this case, and we went to great lengths to clarify exactly what was referenced down there. So what do you put... What basket do you put most of your eggs? Is it in the... You've got a number of them. You've got the judicial estoppel argument where the... agreed in Virginia Beach that the confessed judgment was valid or tried to take advantage of it. You've got a waiver question in the forbearance agreement. And then you've got your view that there's a presumption of regularity and that service was, in fact, affected. And this is nine years after the fact when perhaps the records of the sheriff's office have been discarded after a period of nine years. But what you have is the Richmond court's notes saying service issue. And it was actually served in Virginia Beach. But the, you know, nine years have elapsed, and I guess some records are simply not available after that particular point in time. But which of these arguments? You've got three or four of them, or is it all of the above? I think all are strong and all provide grounds for judgment in our favor. I think judicial estoppel would be the strongest. I don't see any way around that. I think the presumption of service as well is completely appropriate, and that's what Judge Wright-Allen chose. Speak to the judicial estoppel aspect of it. As I understand it, what the plaintiffs can, what they said was that the forbearance agreement was approved. That doesn't mean that it had been perfected by service. So I'm not following the estoppel in terms of the question of perfection by service aspect of it. And, Judge, this is even if the presumption does not apply, even if the waiver does not apply. Judicial estoppel applies even if there is a void judgment. That's what the Supreme Court has said. That's what this Court has said. And that's what would be preclusive here because this was raised, this was discussed, and it was never opposed or rejected throughout this entire time. Judge Shockley changed her initial opinion once that confessed judgment was introduced, and that's one of the initial opinions that was redacted. Later on in the case, she looks at the entirety of everything in rules in our client's favor on that separate foreclosure action under a separate document. And that was also brought up to the Supreme Court. I mean, the language was... How long has this litigation been going on? There were several... You've heard all these different proceedings here and there in Virginia Beach, state court, federal court. How long has this stuff been going on? There were disputes prior to June 2000 when the confession of judgment agreement was executed. In 2007, there was a foreclosure under separate leases and deeds of trust, and that's when the confession of judgment... How long have these parties been in court? 2008. 2008. On this particular issue. So it's nine years. That's right. Have we reached the point where, you know, people are mortal but lawsuits are immortal? Are we getting there? We're getting there. Well, Judge, I wouldn't say that that's any... Our clients have pursued this. We pursued it in 2008. There were numerous hearings, numerous objections, numerous motions for reconsideration. The judge ordered foreclosure... Why has this stretched out over nine years? Is that your fault or theirs? I do not believe it's our client's fault, Your Honor. We have pursued this. Aggressively, they have been throwing up additional arguments throughout, and we've been marching forward. Just the day prior to the foreclosure, because the only thing left for the Richmond Circuit Court to do after ruling on all the evidence, they were pursuing the foreclosure here, and bankruptcy was filed. And then that bankruptcy was referred to the district court, and so we couldn't complete the foreclosure. Then the district court ruled how it did after we clarified the record, and now it's up on the appeal of the Fourth Circuit. The bankruptcy has been dismissed, and now we have this Fourth Circuit argument pending while that state court... The problem with this case, it is a long time. It's been going on, and you've got arguments coming up in the middle of it. But you've got this Virginia statute. I'm not sure I've seen it in other states, but I know Virginia has this statute here that says you've got to show return of service. And it is clear that is not in the Richmond case, that return of service. That's a problem in this case. And then the words from your Supreme Court says void. It didn't say board of oath. It says void. That's powerful stuff when you get there. And that's why we get into this whole business of, you say a stop over here, so should I go there? The waiver aspect of it then kicks in in terms of, well, does the forbearance agreement do this? Your counsel on the other side said, the law requires us to put this language in there. That doesn't mean that we actually got it. We just put in what the law requires, put that language in there. And that's kind of where it is. I mean, the whole business of it, and I agree, it seems nonsensical. You can go on years and years and years, and then all of a sudden come up with this, what seems like a procedural argument. But this procedural argument is statutory. And the Supreme Court of Virginia is pretty tough on this thing. You've got to show that return of service, and I guess so that you don't have people coming in saying you confessed to judgment, you didn't show it. And that sheriff down there says, he didn't say we lost it. He said we didn't get it. That's the problem with trying to comply with the statute. So if we can't find some kind of means to deal with this through waiver or whatever is there, it becomes really problematic in terms of trying to deal with this case. I think the sheriff down there nine years later did say, per our records, and Judge Wright-Allen said, look, this is just colorable. This is not probative. This is not going to defeat that presumption. We have evidence, which is all of the evidence of the payment for service, the issuance of service, the court's notes of service. We also have the fact that in 2007, there is no- The statute requires that whoever serves that confessed judgment to file a return of service. I presume that's in the Richmond book. It would be in Virginia Beach, I believe. And it's not there. I should know it would be in Richmond. I mean, if it's there, court records don't disappear like you do maybe the sheriff's records and stuff. And there's a reason for it. It's sort of like having a deed on the file, I guess, a UCC-type file. It ought to be there. And it sort of seems like a rather simple thing, I guess, when the legislature did this. They said, well, that's pretty simple. You file a return of service. It's in court. Whenever you walk in, we're going to now know it's there. And it's not there. The court has moved to electronic filing. We can't- I mean, this was served at their- So you think the court, actually, that file might be infirmed. In other words, there may be things that were filed there, and it's the court. But the statute requires it, is what I'm saying. We don't have evidence that it wasn't served, apart from that statement of the sheriff that says it's not there. Whose birth is it to show service? Is this a presumption of regularity? It's a presumption. So if you have a presumption of regularity, and then you have the Richmond notes saying service issued, and you have nine years, does the presumption of regularity shift the burden to the party that's contesting service? That Ramsey case that opposing counsel cited talked about the majorities of the federal circuits and how they work with that. I think the majorities say that it's on the burden of the debtor, or it's the burden of the debtor. And I would agree those were federal cases. But here, even in Virginia, we have that presumption that it's served. Whether it's a statutory right or a constitutional right, as my friend Judge Winn points out, those can be waived. I mean, the fact that it's a statutory right doesn't mean it can't be waived. In fact, it can be. Why do you say this is a finding of fact subject to clearly erroneous review on the question of whether service was affected? Because there were significant facts compiled before the court on summary judgment, and she had these detailed transcripts and prior proceedings to review. But this doesn't come from a trial. That's right. Summary judgment, Your Honor. But it was a hearing. There was no hearing. It was on the briefs. But you're saying that the finding was not in error in any event because of the notation from the Richmond clerk's office? Yes, I do not believe the finding was in error, and I believe that all of the grounds that we asserted in summary judgment were valid and are grounds for affirmation. What is your best argument for saying that it was waived, the service was waived? The actual language of the forbearance agreement, that it's unconditional, that the actions of the attorney in fact are ratified by the confessors, that every single action there is a how the forbearance agreement is going to So once the forbearance agreement was signed, the attorney in fact didn't have to do anything. He didn't have to send it to the sheriff or send it to anybody. Is that right? 8.01-435, if someone is confessing it themselves, there doesn't need to be service. But the attorney in fact is not a confessing it themselves. I think that's sort of separated out from Virginia law. I thought the attorney in fact actually had to do something, and the only basis you see in waiver is this additional language in here, the confessory that says without further notice. And by the fact that the agreement says this is ratified as if done by themselves, an individual can do it themselves under 8.01-435, or an attorney in fact can do it here, I think, because they've said you're going to do this as if we're doing it. That's another argument for why there wouldn't need to be service. What was the nature of the benefit that they received from the forbearance agreement? It was a forbearance on collection, and there were several ways of credits that were involved and discussed throughout. How much money did the creditor forbear from collection? I believe it was a forbearance on the entire judgment. Which was? At that point there was I think around $800,000 that was involved. So Agnews got the use of that money for that period of time? Right. And, Your Honor, I think in terms of evidence that this was confessed, I think you can look back at the 2007 proceedings where there was discussion of this and there was not a mention that it wasn't served. I think that also provides some evidence in support of the presumption that it was served. That there's that reliance on it. I think that not only goes to Estoppel, but as to that. In other words, you're saying that by their admitting the judgment was valid in 2007, they're precluding from now raising the question that there was no service. It should have been done at that time, your argument. Yes, you can't rely on something to your benefit and to the detriment of the other party. The court has been clear on that. In one of the cases they cited, that was the Dixie-Splint case, which was a Supreme Court case with Smith v. Litton, Parties may lawfully agree to confirm a void judgment. It may be accepted as valid by their consent. You're quoting another Supreme Court case, Eubank v. Fuller. He is not permitted to affirm its validity and later repudiate it. He cannot claim that it is valid and later claim that it is void. And I don't see a way around that. I see that that's what's happened here, Your Honor. Since it sounds like you ended, would you give me a little structure? Because I couldn't understand how this thing came about in the beginning. You've got this initial matter that brings resource into it, I guess, as the lender. And then there's a default, and the lender goes against the property, and then you end up with ULC and the agnews going against resource. How does that happen? The agnews were contemplating litigation against resource. That's not how it was set up. I'm just trying to see. How do you get these three in there? What is the relationship? I didn't understand resource and how USC turned to go against resource because it wants to protect the collateral. I believe in the forbearance agreement, it would be the agnews going against resource bank because of the lender liability potential claims. Just tell me the structure. That's what I can tell you at the moment, Your Honor. Before 2000? Agnews got a loan from resource, right? Right. And resource got collateral with this property. Right. How does ULC get to it? If the agnews recovered on that resource litigation through lender liability against resource, that money would be used to pay the confessed judgment and be a credit. And the confessed judgment debt arose from what? Of numerous leases of equipment that were all consolidated here. So it's separate from this property here. And they only have, I assume, a collateral interest in that property, which is the reason they want it. The judgment lien. Thank you. Thank you, Your Honor. Are there any more questions? No, Your Honor. Thank you. Thank you. Mr. Bratton. Judge Wilkinson, I wanted to address the presumption issue. There is no presumption of service in this case because there is no return of service. Note, the Seventh Circuit Court of Appeals, we've cited all the cases in our brief. The only way that the presumption of regularity in the discharge of functional duties of this sort, and my question is, when you have a presumption, normally a presumption shifts the burden of proof. But the only presumption is that the Richmond Circuit Court sent the papers somewhere. And you have the – then if that's the presumption, then we have the sheriff's affidavit from Virginia Beach, which is crystal clear. It doesn't just say we couldn't find them in our records. Counsel said we searched our records. It doesn't say that. They don't say that at all. They say we never received them. We never served them. They're unequivocal. The Richmond note says service issue. Well, Judge, we don't know what this says. It says CR2RR and serve, whatever that means. There was no testimony ever offered by anybody as to what that means. And it's unauthenticated. It could have meant anything. I don't know what that means. Nobody knows what that means. There's no presumption here because there is no return of service. The return of service, according to the – When did you raise this question? I raised it in every brief that we ever wrote, the presumption of service. We've opposed the presumption of service in every brief we've ever filed. The return of service is the key. In order to get the presumption of service, there has to be a return. The return of service, as Judge Davis said in the Ramsey case, that then shifts the burden to the plaintiff, to the defendant, to show we didn't get it. And sometimes they can rebut it. They can say, no, I was in California, or that was my brother's house. This court decided the Bonham case, and we've cited it in our brief, where the sheriff showed up at the wrong house and yelled at some people who were in the house, I've got some papers for the Bonhams, and then he served the house. And this court said, that's not sufficient. Default judgment is void. And I would commend the Bonham case to show that there has to be a valid return of service, not an uncorroborated return. But you're looking at that in a vacuum because there's no, in those cases, there were no waivers. I'll get to the waiver, Judge. In a forbearance agreement. Yes, sir. To service. And the response is, well, it had to be a boss or something such as that. Judge, there's no waiver in this case of the service of 8.01438. There is none anywhere in the record. The Agnews never waived the obligation to serve them with a confessed judgment. And the reason it's important in this case is because a creditor can go confess judgment without the knowledge of the debtor and tack on whatever they want. Here, they tacked on an additional $250,000 unjustified workout fee. That's the abuse that this statutory scheme is designed to prevent that allows a creditor to abuse it. United Leasing could have gone and confessed for $2.5 million. And if the Agnews didn't know about it until seven years later, what's their remedy? The remedy is to say it's void. It's hard to believe. You signed a contract. It's basically a breach of contract case. You know what your obligations. The idea that you were completely in the dark about each and every part of this case just strikes me as fanciful. Because you are arguing as if you were somehow not a party to a contract. No, I'm not, Judge. Yes, you are. Because a lot of the presumption of service cases come where there's not necessarily any kind of contractual relationship of this clarity before the court. But, Judge, we signed a contract, the forbearance agreement. That doesn't mean we knew when they confessed the judgment or that they confessed the judgment. We signed a contract. It doesn't contain a waiver of the obligation to serve the judgment. It does not contain it and nowhere is it. It contains a waiver of objections. You waive objections to the confessed judgment. But that's the language in 431. They have to comply with all the provisions of the scheme. They don't just get to do one element. But one of the objections to the confessed judgment is, in your view, is you're lodging it today. Well, it wasn't served. But the point is, in the contract, in the forbearance agreement, you waived objections to the confessed judgment, and you were raising an objection to the confessed judgment right here and now before us, which is the subject of the waiver. Your Honor, I'm confident that when you look at this statutory scheme, 8.01431, it has it. You can waive statutory rights. People do that all the time. I understand. People waive constitutional rights. There are no rights that aren't waivable. But they never waived the 8.01438. They never waived that. You waived the right. You waived objections to the confessed judgment, and you are now making an objection to the confessed judgment, which is right at the heart of the waiver. They never waived the service, Your Honor. You don't have to waive the service. You're trying to get too particular on me. You waived objections to the confessed judgment, and that's what you're making today. You're going right against the language of the forbearance agreement and the benefit substantial, I might add, since there was $800,000 that you got to use. You're not a victim in this case. Judge. You're trying to get out of paying what you owe. And this forbearance agreement is clear that there's a waiver of objections. Judge, may I respond? Yes, you may. Judge, I respectfully disagree with you. Of course you do. To the extent that the Agnews are trying to get out of something that they owe. This is about whether or not the creditor complied with the statutory scheme. If they don't comply with the statutory scheme, the confessed judgment is void, and the Virginia Supreme Court has been- But you're trying to push on the court the notion of an unwaivable right. And, you know, that's just not true. I mean, I don't know of many examples where you can even waive your right through a jury trial. I understand that, Judge, but the district court never ruled on this waiver issue. She never ruled on any of these issues because there is no evidence that they waived. It's a contract. I know, but they didn't waive it in the contract. Judge, they have to waive it in the contract. You're saying contracts don't count as evidence? No, no, but I'm saying that waiver has to be knowing, voluntary, and it has to be a clear and unequivocal evidence of waiver. There's no evidence they waived the statutory right. And, Judge, just on one other point, you asked me about the redacted transcripts. Is this the most crucial point you're ever going to make? No, but you did ask counsel about the redacted transcript, why I didn't put in the rest of it. It's on page 45, footnote 12. All the reasons are in there, and we've cited also the full transcripts in the record, all the reasons I didn't put in the entire transcript. All right, we thank you very much. Thank you, Your Honor. We'll come down and recounsel and take a brief recess. This is honorable court, we'll take a brief recess.
judges: J. Harvie Wilkinson III, James A. Wynn, Jr., Henry F. Floyd